## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAYMONE K. BAIN | |
| *Plaintiff,* | |
| v. | Case No. 1:13-cv-848-RCL |
| GARY, WILLIAMS, PARENTI, WATSON & GARY, P.L., *et al.,* | ~~*FILED UNDER SEAL*~~ *lef* 10/8/22 |
| *Defendants.* | |

## MEMORANDUM OPINION

This case concerns two lawsuits. The first is a contract dispute between the late Michael Jackson, colloquially known as the "King of Pop," and his former agent and general manager, Raymone Bain. Ms. Bain brought a lawsuit against Mr. Jackson in May 2009, only a few weeks before Mr. Jackson's death, alleging that Mr. Jackson and his production company had withheld tens of millions of dollars in fees that she had earned by securing lucrative projects. Ms. Bain's contract action was dismissed a little less than a year later, after the district court concluded that she had signed away her right to sue in a release agreement with Mr. Jackson and his personal and business entities ("the Jackson parties").

The second lawsuit, which is currently before this Court, is a legal malpractice action brought by Ms. Bain against the law firm and attorneys that represented her in the first—Gary, Williams, Finney, Lewis, Watson, and Sperando, P.L., and attorneys Willie E. Gary, and Linnes Finney, Jr. ("the Gary defendants"). She alleges that they lost her first lawsuit due to legal malpractice. Ms. Bain argues that the Gary defendants negligently (1) failed to file for appeal or reconsideration, (2) failed to marshal evidence in her favor or otherwise keep her informed, and (3) failed to alert the court to a letter written to her by Mr. Jackson. She believes that the absence

1

of any one of these failures, or all the failures together, would have changed the outcome of her original lawsuit.

The Gary defendants moved for summary judgment on the required causation element of legal malpractice. They argue that, even absent their alleged malpractice, Ms. Bain would have lost her original lawsuit and that they are consequently not liable for its dismissal. After considering the record, the applicable law, and the parties' briefing, this Court agrees with the Gary defendants and will therefore **GRANT** the Gary defendants' motion for summary judgment and **DISMISS WITH PREJUDICE** Ms. Bain's present lawsuit.

## I.   BACKGROUND

Much of the background of this case was previously explained in the Court's decision on the Gary defendants' motion to dismiss, *Bain v. Gary, Williams, Parenti, Watson & Gary, P.L.*, 53 F. Supp. 3d 144 (D.D.C. 2014) ("*Bain II*"). Nevertheless, given the significant time that has passed since that decision, and the more detailed record required on summary judgment, this Court will explain afresh the facts and procedural history of Ms. Bain's two lawsuits.

### A.  Ms. Bain's Business Relationship with Michael Jackson and the Origins of Her Release Agreement

In the early 2000s, Raymone Bain worked for Michael Jackson as his publicist, and in her recounting, as his adviser as well. *Bain v. Jackson*, 783 F. Supp. 2d 13, 16 (D.D.C. 2010) ("*Bain I*"); Pl.'s Opp'n [Corrected] 2 ("Pl.'s Mem."), ECF No. 94-1. In 2006, Ms. Bain's role expanded. She signed a Personal Services Agreement ("PSA") with Mr. Jackson which made her the "President/COO" of the "Michael Jackson Company," a new entity, and was promised a 10% "Finder's fee" for any agreements or engagements initiated by her or her agents. *Bain II*, 53 F. Supp. 3d at 146; Pl.'s Ex. 1, ECF No. 91-5. Mr. Jackson also appointed Ms. Bain as his general manager and agent. *Bain I*, 783 F. Supp. 2d at 16; Pl.'s Ex. 2, ECF No. 91-6. From that point

forward, Ms. Bain alleges that she negotiated several projects on Mr. Jackson's behalf, all of which were covered by the Finder's fee in the PSA. *Bain II*, 53 F. Supp. 3d at 146; Pl.'s Mem. 3–4.

By the end of 2007, Mr. Jackson had accumulated significant debts and had failed to make payments to employees and consultants, including Ms. Bain. Pl.'s Mem. 4. Mr. Jackson subsequently began refinancing some of his debt. Pl.'s Mem. 5; Pl.'s Ex. 3 65:1–66:22, 137:1–139:12, ECF No. 94-4. In conjunction with the refinancing, Mr. Jackson's lawyers initiated a "process . . . to clean all past debts and liabilities of Mr. Jackson." Pl.'s Ex. 6, ECF No. 91-10. To that end, his attorneys sent out release agreements via email to various individuals and entities, including Ms. Bain, on December 3, 2007. *Id.* ("I [(Mr. Jackson's attorney Frank Salzano)] have been assigned the task of obtaining the payment releases from all parties compensated from funds payable under the forthcoming transactions. This process is to clean all past debts and liabilities of Mr. Jackson.").

Ms. Bain alleges that she had several discussions with Mr. Jackson's agents, and Mr. Jackson himself, to understand whether her release would cover "past due debts" or, like the releases sent to other employees, be "unconditional." *See* Pl.'s Mem. 16–17, 21; Pl.'s Ex. 3 125:1–127:24. For example, she alleges that she spoke with Londell McMillan, one of Mr. Jackson's attorneys. Pl.'s Mem. 5; Pl.'s Ex. 3 121:9–122:9, 126:20–127:21, 135:4–136:25. Mr. McMillan purportedly stated during that conversation, "if Michael Jackson enters into a trillion dollar agreement today, you would get paid on the 28th. . . . He owes so much money, I don't understand why there is such a big deal about your signing or anybody else signing a release." Pl.'s Ex. 3 135:4–135:23. She also claims that she spoke with Frank Salzano, who sent the December 3, 2007 email, about whether the releases covered past due debts. Pl.'s Mem. 5; Pl.'s Ex. 3 127:10–127:21. Finally, she avers that she spoke with Mr. Jackson, who told her about the problems he was having

with potential lawsuits and the refinancing, explained that she could choose whether or not to sign the release, and that he was "not signing a damn thing." Pl.'s Ex. 3 137:1–139:13. Ms. Bain alleges that she subsequently informed Mr. Jackson that she would sign the release. Pl.'s Ex. 3 138:19–139:12.

And indeed, she did sign a release agreement after purportedly taking two additional actions. First, she claims that she had language added to limit the period of time covered by the agreement, to state: "[this release is for monies] to be owed to you with respect to any payments you've entered into and agreements at the beginning of time until December 27th, 2007." Pl.'s Ex. 3 125:1–125:12. Second, she added handwritten comments into the beginning of the agreement. Pl.'s Ex. 3 133:1–134:17; Payment and Release Agreement ("Release") , ECF No. 89-2 at 8–10.

The Release is three pages long, but in most relevant part, including Ms. Bain's handwritten additions, reads:

> In consideration of the mutual promises and understanding herein contained, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows: $218,820.05 cash disbursements, loans, cash card exps $270,000.00 consultant's fee exps ($488,820.05 exps) Mr. Jackson shall render a payment made payable to you in the amount of four hundred eighty eight thousand eight hundred & twenty & 05/100 Dollars ($488,820) as full and final satisfaction of any all monies, known or unknown, to be owed to you by the Jackson Parties with respect to any and all agreements whether verbal or written that you may have entered into with the Jackson Parties from the beginning of time until December 27, 2007 (the "Payment").

> 2. Except as otherwise set forth herein, in consideration of the Payment and other consideration provided herein, you on behalf of yourself . . . do hereby absolutely, fully and forever release, relieve, waive, relinquish and discharge the Jackson Parties . . . of and from any and all manner of action or actions, suits, debts, liabilities, demands, claims, obligations, costs, expenses, sums of money, controversies, damages, accounts, reckonings, and liens of every kind or nature whatsoever, whether known or unknown, suspected or unsuspected which you shall or may have, own or hold, or which they at any time heretofore had owned or held against the Jackson Parties by reason of, arising out of or in connection with any matter whatsoever. . . .

6. This Agreement contains the entire understanding between and among the parties hereto and supersedes any and all prior understandings, agreements, representations, covenants, warranties, and releases, express or implied, written or oral, between any of the parties concerning the subject matter of this Agreement. No changes or modifications to this Agreement or any new agreement shall be made between the parties hereto unless expressly set forth in writing. . . .

9. This Agreement shall become effective upon receipt of the Payment.

Release at 1–3.

### B. Ms. Bain's Lawsuit Against the Mr. Jackson and MJJ Productions

In 2009, Ms. Bain sued Mr. Jackson and MJJ Productions, Inc. ("Contract Dispute defendants"), under breach of contract, unjust enrichment, and quantum meruit theories and alleged that she was owned tens of millions of dollars. *Bain II*, 53 F. Supp. 3d at 146. Specifically, she claimed that she was never paid the Finder's fee that she was entitled to for the projects that she negotiated. *Id.* In response, the Contract Dispute defendants moved to dismiss Ms. Bain's lawsuit because she had released them from liability. *Id.*

Ms. Bain opposed the motion to dismiss on the grounds that consideration of the Release was inappropriate on a motion to dismiss, or, alternatively, that the Release was invalid, procured by fraud, or based on a mistake. *Id.* The district court subsequently converted the motion to dismiss into a motion for summary judgment and then stayed the case due to Mr. Jackson's death. *Id.* For all of the foregoing proceedings, Ms. Bain was represented by the law firm Cahn & Samuels LLP. *Id.*

When the district court lifted its stay, it allowed Cahn & Samuels to withdraw as counsel. *Id.* In their place, the Gary defendants entered appearances as counsel for Ms. Bain. *Id.* Ms. Bain's new counsel filed supplemental briefing on her behalf—including affidavits contesting the

authenticity of Mr. Jackson's signature on the Release and supporting Ms. Bain's allegations regarding fraud. *Id.*; *Bain I*, 783 F. Supp. 2d at 16.

On May 7, 2010, the district court granted the Contract Dispute defendants' summary judgment motion and dismissed Ms. Bain's lawsuit. *Bain II*, 53 F. Supp. 3d at 146 (citing *Bain I*, 783 F. Supp. 2d at 16–19). The district court found that the Release validly applied to Ms. Bain's breach-of-contract claim—because the PSA was signed within the time period specified by the Release—and rejected her allegations of fraud, mistake, and inauthentic signature. *Bain I*, 783 F. Supp. 2d at 16–19. The district court dismissed the quantum meruit and unjust enrichment claims because the PSA was a valid contract "which precludes relief under those theories." *Id.* at 19.

## C. Ms. Bain's Motion to Set Aside the Judgment and the April 24, 2008 Letter

Five months after her case was dismissed, Ms. Bain moved to set aside the judgment because of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." *Bain II*, 53 F. Supp. 3d at 146–47 (quoting Fed. R. Civ. P. 60(b)(2)). Her new evidence was an April 24, 2008 letter from Mr. Jackson to Ms. Bain ("the Letter"). *Id.* at 147. It reads:

> Dear Raymone:
>
> I have never terminated your services nor did I null and void any of your Agreements.
>
> I know nothing about a release form. I neither authorized or signed the same.
>
> Therefore, I am authorizing you to continue to communicate with Mr. Yakoob regarding the Sultan's property in Las Vegas, and to continue your role as my General Manager and President/COO of The Michael Jackson Company.
>
> Thank you.

Pl.'s Ex. 9, ECF No. 91-12.

Ms. Bain avers that the Letter was prompted by a conversation between Ms. Bain and Mr. Jackson. During the alleged conversation, Ms. Bain explained to Mr. Jackson that rumors on the internet and in the media suggested that she had been terminated from her position and Ms. Bain informed Mr. Jackson that she needed a document to refute those rumors and reaffirm her role. Pl.'s Ex. 3 146:3–149:10. She also claims that she informed the Gary defendants about the Letter prior to the district court's decision on the Contract Dispute defendants' summary judgment motion. Pl.'s Mem. 7.

Ms. Bain's attorneys, including the Gary defendants, did not mention the Letter to the district court before summary judgment was granted. *See Bain II*, 53 F. Supp. 3d at 147. Ms. Bain's motion to set aside the judgment was denied by the district court and that decision was affirmed by the D.C. Circuit. *Id.*; *Bain v. MJJ Prods., Inc.*, 751 F.3d 642 (D.C. Cir. 2014).

## D. Ms. Bain's Present Lawsuit Against Her Former Attorneys

During her appeal, "Ms. Bain filed the present action, alleging that the Gary [defendants] committed legal malpractice by failing to (1) amend the complaint to include events that occurred subsequent to initiation of the suit; (2) marshal additional facts and evidence to support Ms. Bain's claims; (3) alert the court to the existence of the April 24, 2008 letter and request the court's assistance in recovering the letter through discovery; (4) keep Ms. Bain informed about the status of her case; and (5) file a timely motion for reconsideration and/or notice of appeal." *Bain II*, 53 F. Supp. 3d at 147. In 2014, this Court denied the Gary defendants' motion to dismiss for failure to state a claim. *Id.* at 146–49. In rejecting the Gary defendants' motion, this Court concluded that there were "fundamental questions of fact" before the Court that could not be resolved on the motion to dismiss. *Id.* at 149. Shortly thereafter, the Court stayed the action pending resolution of two actions in the Superior Court of California concerning Mr. Jackson's estate. Order, ECF

No. 57.  The Court dismissed this case without prejudice to be reinstated upon the conclusion of those State actions.  Order, ECF No. 61  This case was reinstated in 2020.  Order, ECF No. 80.

The Gary defendants subsequently moved for summary judgment arguing that, even absent malpractice, Ms. Bain would not have won her original lawsuit and thus there is no causation between their alleged negligence and an injury to Ms. Bain.  Defs.' Mot., ECF No. 89; Defs.' Mem. in Supp. ("Defs.' Mem."), ECF No. 89.  Ms. Bain opposed.  Pl.'s Mem.  The Gary defendants subsequently replied.  Defs.' Reply, ECF No. 99.  The Gary defendants' motion is now ripe for review.[1]

## II.    LEGAL STANDARDS

As this Court previously explained, federal procedural law and State substantive law govern this diversity action.  *Bain II*, 53 F. Supp. 3d at 147.

### A. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in the original).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law."  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  Even hotly contested factual disputes that are irrelevant under the governing law will not defeat summary judgment.  *Id.*  A factual issue is "genuine 'if the nonmovant presents evidence such that a reasonable [factfinder] could return a verdict for the nonmoving party.'"  *Occupational Safety & Health L. Project, PLLC v. Dep't of Lab.*, No. 1:21-

---

[1] Ms. Bain also moved for partial summary judgment on the standard of care.  ECF No. 87.  However, because the Court will grant defendants' motion for summary judgment on a required element for Ms. Bain's claim, her partial motion for summary judgment will be denied as moot in the order accompanying this memorandum opinion.

cv-2028 (RCL), 2022 WL 3444935, at *3 (D.D.C. Aug. 17, 2022) (alteration in the original) (quoting *Doe v. Exxon Mobil Corp.*, No. 1:01-cv-1357 (RCL), 2022 WL 3043219, at *7 (D.D.C. Aug. 2, 2022)). The Supreme Court has further explained that if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" then the moving party is entitled to judgment as a matter of law so long as it meets its own requirement "of informing the district court of the basis for its motion and identifying those portions of [the record] . . . demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

To that end, the Court will "view the evidence in the light most favorable to" the nonmoving party and should not "make credibility determinations." *Holcomb*, 433 F.3d at 895. Furthermore, when evaluating the motion, a "court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

### B. Legal Malpractice

The Court must apply the substantive law of the District of Columbia for the standard of legal malpractice. *Bain II*, 53 F. Supp. 3d at 147. Under that law, "the plaintiff must demonstrate (1) the applicable standard of care; (2) a breach of that standard; and (3) that the breach caused the harm complained of." *Id.* (citing *Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 664 (D.C. 2009)).

The Gary defendants' summary judgment motion contests only the third element, causation. In a legal malpractice case, causation requires use of the "case within a case" doctrine. Under that analysis, "[t]he malpractice judge or jury must decide a case within a case and determine what the result would have been [in the underlying lawsuit] absent the alleged malpractice." *Jacobsen v. Oliver*, 451 F. Supp. 2d 181, 187 (D.D.C. 2006) (internal quotation marks omitted) (second alteration in the original) (quoting *Rubens v. Mason*, 387 F.3d 183, 190

(2d Cir. 2004)).  This unusual-sounding judicial adventure is in fact "the accepted and traditional means of resolving the issues involved in the underlying proceeding in a legal malpractice action." *Id.* (quoting Smith & Mallen, 4 Legal Malpractice § 33.9).  The goal is to recreate "what 'should have been' at the time of the underlying action for purposes of assessing the attorney's allegedly negligent conduct." *Id.* (quoting Smith & Mallen, 4 Legal Malpractice § 33.9).  Therefore, a plaintiff in a legal malpractice claim must prove both that her attorney was negligent and that the resulting "case within a case" would have resulted in success without the attorney's negligence. *See id.* "Only by making out both cases can a plaintiff demonstrate a 'causal relationship, or proximate cause, between the violation and the harm complained of. . . .'" *Id.* (quoting *Smith v. Haden*, 872 F. Supp. 1040, 1053 (D.D.C. 1994), *aff'd*, 69 F.3d 606 (D.C. Cir. 1995)).

Furthermore, when evaluating whether a case would have been successful absent an attorney's malpractice, the law governing the underlying lawsuit at the time of that original lawsuit generally governs the subsequent court's analysis. *Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*, 128 F. Supp. 3d 103, 110 (D.D.C. 2015), *aff'd*, 653 F. App'x 764 (D.C. Cir. 2016). This stems from the principle that an attorney's conduct should be judged at the time of his representation and "an attorney is not expected, much less required, to accurately predict developments in the law." *Biomet*, 967 A.2d at 668.[2]

### III.   DISCUSSION

The Gary defendants challenge Ms. Bain on her "case within a case."  Accordingly, this Court must reconstruct the original case that Ms. Bain brought against the Contract Dispute defendants and decide—within the summary judgment standard—whether the Gary defendants'

---

[2] Although, in special circumstances like statutory interpretation, later decisions will be applied backward to determine the propriety of an attorney's conduct because "[statutory] construction is an authoritative statement of what the statute has always meant that applies retroactively." *Encyclopaedia Britannica, Inc.*, 128 F. Supp. 3d at 111.

alleged malpractice caused Ms. Bain to lose a meritorious claim in that action. Ms. Bain brought three claims in her original lawsuit: breach of contract, unjust enrichment, and quantum meruit. *Bain I*, 783 F. Supp. 2d at 16; Defs.' Mem. 1; Pl.'s Ex. 8, ECF No. 91-11. Here, she alleges that the Gary defendants' actions lost her that lawsuit because they failed to "(1) amend the complaint to include events that occurred subsequent to initiation of the suit; (2) marshal additional facts and evidence to support Ms. Bain's claims; (3) alert the court to the existence of the April 24, 2008 letter and request the court's assistance in recovering the letter through discovery; (4) keep Ms. Bain informed about the status of her case; and (5) file a timely motion for reconsideration and/or notice of appeal." *Bain II*, 53 F. Supp. 3d at 147.

For the purposes of this causation analysis, those five alleged failures can be broken down into three categories of potential effect on Ms. Bain's original lawsuit. These categories are important because, in order to decide whether the Gary defendants merit summary judgment on causation, this Court must precisely trace whether an alleged failure by the Gary defendants caused Ms. Bain to lose a meritorious claim in her original lawsuit.

The first category consists of the alleged failure to file a motion for reconsideration or notice of appeal. Causation will only be satisfied for that category if reconsideration or appellate review would have led to a favorable outcome for Ms. Bain. Therefore, this Court must consider the evidence available to the district court at the time of the ruling and determine whether de novo review would have led Ms. Bain to maintain a meritorious claim. *Steele v. Salb*, 93 A.3d 1277, 1282 (D.C. 2014). The second category is the failure to alert the district court to the existence of the Letter. Causation will be satisfied if the Letter would have led to a ruling in favor of Ms. Bain if it had been presented. Finally, the remaining three alleged failures focus on the lack of introduction of additional evidence or events based on adequate investigation or consultation. To

determine causation for this final category, the Court will consider whether the new evidence that Ms. Bain has marshaled in the present lawsuit would have led her to maintain a meritorious claim if introduced in the original lawsuit.

Moreover, because the substantive law governing the Release was the law of New York, *Bain I*, 783 F. Supp. 2d at 17, the Court must evaluate the questions related to the Release under the same. *See, e.g.*, Pl.'s Mem. 15, 19, 22 (citing New York law for considering the Release); Defs.' Mem. 11 (accepting New York law as providing the governing law for the case within a case for the Release).  The substantive law of the District of Columbia was applied to the claims for quantum meruit and unjust enrichment, *Bain I*, 783 F. Supp. 2d at 19, and this Court will also apply that law.

After considering the three categories of alleged malpractice as applied to the original claims of breach of contract, quantum meruit, and unjust enrichment, the Court concludes that the Gary defendants' motion should be granted and judgment as a matter of law should be entered on the causation element.

### A. Summary Judgment is Warranted on Causation for the Original Breach-of-Contract Claim

The district court dismissed Ms. Bain's original breach-of-contract claim because that court concluded the claim was barred by the Release. *Bain I*, 783 F. Supp. 2d at 17–18.  Therefore, this Court will begin by summarizing the general principles regarding the validity of a release under New York law.

"It is well established [under New York law] that a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Glob. Mins. & Metals Corp. v. Holme*, 824 N.Y.S.2d 210, 214 (N.Y. App. Div. 2006).  When "the language of a release is clear and unambiguous, the signing of a release is a 'jural act' binding on the parties." *Booth v. 3669*

*Delaware, Inc.*, 703 N.E.2d 757, 758 (N.Y. 1998).   New York's "public policy favor[s] enforcement of settlements" and thus releases. *Id.* "Releases are contracts and their interpretation is governed by principles of contract law." *Shklovskiy v. Khan*, 709 N.Y.S.2d 208, 209 (N.Y. App. Div. 2000).   A release, like a contract, can still be set aside under a variety of defenses. *See id.* The "traditional bases for setting aside a release[are ]duress, illegality, fraud, or mutual mistake." *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 634 N.E.2d 940, 945 (N.Y. 1994).   The person challenging a signed release has the burden to demonstrate that the release she signed is invalid. *See Mergler v. Crystal Properties Assocs., Ltd.*, 583 N.Y.S.2d 229, 231–32 (N.Y. App. Div. 1992).

The original district court concluded that the Release was valid and because there was "no ambiguity in the language of Bain's Release, [the court] may apply it without considering Bain's testimony about her intent." *Bain I*, 783 F. Supp. 2d at 17.   The district court then rejected the two defenses—fraudulent inducement and unilateral mistake—raised by Ms. Bain to void the otherwise valid release. *Id.* at 17–18.

This Court will now evaluate the same arguments Ms. Bain made in the original lawsuit to determine whether she lost a meritorious claim due to the Gary defendants' alleged negligence. The Court will evaluate Ms. Bain's arguments in the following order: (1) whether the Release was valid and covered Ms. Bain's claims, (2) fraudulent inducement, and then (3) unilateral mistake.[3] After considering the evidence presented by the parties in the light most favorable to Ms. Bain, the Court concludes that there is no genuine dispute of material fact and defendants should be granted judgment as a matter of law on the causation prong of legal malpractice for Ms. Bain's original

---

[3] To contest the Gary defendants' assertion that a valid release will bar subsequent claims covered by that release, Ms. Bain cites generally to the idea "that a release may be invalidated by duress, illegality, fraud, or mutual mistake." Pl.'s Mem. 13–14. However, she provides no specific argument on duress, illegality, or *mutual* mistake. If this conclusory and undeveloped reference was meant to raise the possibility of success on those grounds, Ms. Bain has forfeited the argument by failing to pursue it. *See Taylor v. Fed. Aviation Admin.*, No. 1:18-cv-35 (APM), 2019 WL 3767512, at *8 (D.D.C. Aug. 9, 2019); *Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008).

breach-of-contract claim.  No reasonable factfinder could conclude that, even absent defendants' alleged malpractice, Ms. Bain had a meritorious breach-of-contract claim in her original lawsuit.

### 1. Even Absent Defendants' Alleged Malpractice, the Release Validly Applied to Ms. Bain's Breach-of-Contract Claim

In the original district court action, Ms. Bain attacked both the general validity of the Release and the application of the Release to her Finder's fee.  Because Ms. Bain would have lost on whether the Release validly barred her lawsuit even without defendants' alleged malpractice, summary judgment for the Gary defendants on this issue is appropriate.

When a party signs a contract, the party is "legally bound by his or her signature." *State Bank of India v. Star Diamonds, Inc.*, 901 F. Supp. 177, 179 (S.D.N.Y. 1995).  New York law favors the validity and effect of a release.  *See Booth*, 703 N.E.2d at 758; N.Y. Gen. Oblig. Law § 15-303 (McKinney) (stating that a release "shall not be invalid because of the absence of consideration or of a seal"); N.Y. Gen. Oblig. Law § 5-1103 (McKinney) (stating that "[a]n agreement, promise or undertaking to change or modify, or to discharge in whole or in part, any contract, [or ]obligation . . . shall not be invalid because of the absence of consideration, provided that the . . . [release] shall be in writing and signed by the party against whom it is sought to enforce the change, modification or discharge, or by his agent").  "All that is required is that there be an expression of a present intention to renounce a claim or discharge an obligation." *Pratt Plumbing & Heating, Inc. v. Mastropole*, 414 N.Y.S.2d 783, 784–85 (N.Y. App. Div. 1979).  "[I]t is not a prerequisite to the enforceability of a release that the releasor be subjectively aware of the precise claim he or she is releasing." *Mergler*, 583 N.Y.S.2d at 232.  Thus, when a release is clear and unambiguous, "the release plaintiff signed should be enforced according to its terms, and plaintiff's claim dismissed." *Booth*, 703 N.E.2d at 758.

On de novo review, this Court agrees with the district court's decision that the Release was valid as applied against Ms. Bain. Ms. Bain signed the document and concedes that she accepted the $488,820.05 in consideration recited in the document she signed. *See* Release at 3; Pl.'s Ex. 3 131:15–132:3. The Release was given to her by one of Mr. Jackson's attorneys, Pl.'s Ex. 6, and states that that the agreement was between her, Mr. Jackson, and his "personal and business related entities." Release at 1. The Release further states that Ms. Bain was accepting $488,820.05 from Mr. Jackson in exchange for releasing "any and all agreements whether verbal or written that you may have entered into with the Jackson Parties from the beginning of time until December 27, 2007." *See id.* While Ms. Bain presented evidence that Mr. Jackson's signature was not his own, Pl.'s Ex. 10, ECF No. 91-13, it is *her* signature that matters for purposes of enforcement of the release against her. *See Pratt Plumbing & Heating*, 414 N.Y.S.2d at 784–85; N.Y. Gen. Oblig. Law § 5-1103; *cf. Kaplan v. Lippman*, 552 N.E.2d 151, 153 n.* (N.Y. 1990) (per curiam) ("The absence of a signature by the party seeking to enforce the agreement is without legal significance."). Ms. Bain agreed to release the parties in exchange for the $488,820.05 from Mr. Jackson, that money was sent to her, and she then accepted the money. That is sufficient to give the Release valid effect. *See* Release ¶ 9 ("This Agreement shall become effective upon receipt of the Payment.").

Furthermore, the additional fact development from the expanded record available in the present lawsuit would not have defeated the Release's validity. The Release itself states that "understandings, agreements, representations, covenants, warranties, and releases, express or implied, written or oral, between any of the parties concerning the subject matter of this Agreement" were superseded by the Release. The Release ¶ 6. Accordingly, further fact development of prior understandings and representations by Mr. Jackson and his agents, *see infra*

Part I.A., would have been foreclosed when used to contradict the unambiguous language of the Release. *See Marine Midland Bank-S. v. Thurlow*, 425 N.E.2d 805, 807–08 (N.Y. 1981) (applying New York's parol evidence rule).

Finally, Ms. Bain argues that the Letter from Mr. Jackson, if presented to the district court, would have been understood as repudiating or nullifying the Release. *See* Pl.'s Mem. 17–19. The Letter states, in relevant part, "I have never terminated your services nor did I null and void any of your Agreements. I know nothing about a release form. I neither authorized or signed the same." Pl.'s Ex. 9. First, the Letter could not have been a repudiation of the Release because Mr. Jackson had already fully performed by tendering payment. *See* Release ¶ 9; *Paramount Pictures Corp. v. Puzo*, No. 12-cv-1268 (AJN), 2012 WL 4465574, at *8 (S.D.N.Y. Sept. 26, 2012) (explaining that repudiation requires a failure to perform under New York law); *see also In re Best Payphones, Inc.*, 450 F. App'x 8, 11 (2d Cir. 2011) (summary order); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 718 (S.D.N.Y. 2012). Second, the Letter is insufficient to nullify or modify the Release. The Release states that "[n]o changes or modifications to this Agreement or any new agreement shall be made between the parties hereto unless expressly set forth in writing." Release ¶ 6. Mr. Jackson's statement that he was unaware of a "release form" cannot be an express written change or modification of the Release as it does not even acknowledge its existence.

As to the scope of the Release, "[i]nasmuch as the 'language of the release is clear, effect must be given to the intent of the parties as indicated by the language employed.'" *Rocanova*, 634 N.E.2d at 945 (quoting *Matter of Schaefer*, 221 N.E.2d 538, 540 (N.Y. 1966)). General language in a release will be construed against the person releasing claims and the burden is on that individual to establish that the language is in fact more limited. *Consorcio Prodipe, S.A. de C.V.*

*v. Vinci, S.A.*, 544 F. Supp. 2d 178, 189–90 (S.D.N.Y. 2008). If "the language with respect to the parties' intent is clear and unambiguous, it will be given effect, regardless of one party's claim that he intended something else." *Chaudhry v. Garvale*, 692 N.Y.S.2d 447, 448 (N.Y. App. Div. 1999); *Matter of Schaefer*, 221 N.E.2d at 540 ("The fact that the [party] may have intended something else is irrelevant."). "[I]t is not a prerequisite to the enforceability of a release that the releasor be subjectively aware of the precise claim he or she is releasing, lack of such knowledge does not preclude summary judgment." *Mergler*, 583 N.Y.S.2d at 232. And "[i]f the agreement sets forth the parties' intent clearly and unambiguously, the Court need not look to extrinsic evidence to determine the parties' obligations under the contract." *Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 662 (S.D.N.Y. 2008).

On review of the original record, the district court's conclusion that the Release is unambiguous and thus applicable without consideration of Ms. Bain's additional evidence was correct. "The Release unambiguously covers 'all monies, *known or unknown*,' owed under 'any and all agreements whether written or verbal'" within the stated time period in the Release. *Bain I*, 783 F. Supp. 2d at 17 (emphasis in the original); Release at 1. While Ms. Bain is correct that the intent of the parties is important, *see* Pl.'s Mem. 15–17, it is the objective intent in the document itself that matters when the text is clear and unambiguous. *See Rocanova*, 634 N.E.2d at 945; *Chaudhry*, 692 N.Y.S.2d at 448. The language in the Release is, in fact, unambiguous and clear. It states that Ms. Bain accepted the monetary consideration "as full and final satisfaction of any all monies, known and unknown, to be owed to you by the Jackson Parties with respect to any and all agreements whether verbal or written that you may have entered into with the Jackson Parties from the beginning of time until December 27, 2007." Release at 1. Her handwritten additions did not include a strikethrough of that language, nor was there any indication that her writing was supposed

to limit the unambiguous language of the Release that she signed. *See id.* She may have intended a limitation, but the Release does not objectively represent that limitation. *See Matter of Schaefer*, 221 N.E.2d at 540. Accordingly, the district court's conclusion was correct on the record before it and, as a matter of law, the scope of the contract unambiguously covers the PSA and thus Ms. Bain's Finder's fee. *See Rhodes*, 578 F. Supp. 2d at 662–63.

For that same reason, additional record development, or the Letter, would not have changed the result. The clear, unambiguous, and objective intent on the face of the Release, including the scope of the Release, stands on its own. *See Kraft Foods, Inc. v. All These Brand Names, Inc.*, 213 F. Supp. 2d 326, 330 (S.D.N.Y. 2002) (holding summary judgment appropriate on the validity and scope of a release where "[t]he language is as broad and general as it is clear" and "nothing within the four corners of the Release suggests an ambiguity that would permit this Court to look beyond the document to extrinsic evidence as to the parties' intent" absent plaintiff demonstrating an affirmative defense like fraud or mistake).

There is no genuine dispute of material fact barring summary judgment on the issue of whether the Gary defendants' alleged failures caused an adverse ruling against Ms. Bain on the validity and scope of the Release. The district court correctly decided the issue on the record before it, additional fact development would not have led to a different outcome, and presentation of the Letter would not have altered that conclusion.

Given that the Release is valid and facially covers the breach-of-contract claim Ms. Bain brought in her original lawsuit, the Court will now move to the two defenses of fraudulent inducement and unilateral mistake.

### 2. Even Absent the Gary Defendants' Alleged Malpractice, Ms. Bain Could Not Demonstrate the Defense of Fraudulent Inducement

"To establish fraud-in-the-inducement under New York law, Bain [had to] prove that the Jackson parties (1) made a material representation or omission which was false and known to be false (2) for the purpose of inducing her to rely on it, and (3) that Bain reasonably relied upon it in entering the agreement (4) to her detriment." *Bain I*, 783 F. Supp. 2d at 17; *see also Holme*, 824 N.Y.S.2d at 214; *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 528 (S.D.N.Y. 2001). The plaintiff must succeed on each element to make out the defense.

"New York quite clearly rejects any strict application of the parol evidence rule when fraud is claimed. An oral representation which is fraudulent and which induces reliance may be a defense even though it contradicts a provision of a written contract." *Centronics Fin. Corp. v. El Conquistador Hotel Corp.*, 573 F.2d 779, 782 (2d Cir. 1978). Generally, in the context of a release, fraud will lie when the releasor did not have sufficient time for investigation or deliberation, there were unfair circumstances, or it seems unlikely that the release was "fairly and knowingly" made to unknown claims. *See, e.g.*, *Mangini v. McClurg*, 249 N.E.2d 386, 392 (N.Y. 1969); *Himmelsbach v. George*, 894 N.Y.S.2d 647, 648 (N.Y. App. Div. 2010); *Haynes v. Garez*, 758 N.Y.S.2d 391, 393 (N.Y. App. Div. 2003).

When considering the required element of *reasonable* reliance, a plaintiff "must demonstrate that he was induced to 'act or refrain from acting' to his detriment by virtue of the alleged misrepresentation or omission." *Shea v. Hambros PLC*, 673 N.Y.S.2d 369, 374 (N.Y. App. Div. 1998) (quoting *Megaris Furs, Inc. v. Gimbel Bros.*, 568 N.Y.S.2d 581, 584 (N.Y. App. Div. 1991)). When the party claiming to have been defrauded is "a sophisticated business[person]" courts should look with a skeptical eye toward claims of reasonable reliance. *See id.* ("[Plaintiff] can hardly claim with any credibility that he, a savvy businessman, entered into the resulting

agreements lulled by faith or trust in the parties across the bargaining table, or that he unwittingly gave up some valued right in the bargain."); *Abrahami v. UPC Const. Co.*, 638 N.Y.S.2d 11, 14 (N.Y. App. Div. 1996) ("Plaintiffs, who are all sophisticated businessmen, had a duty to exercise ordinary diligence and conduct an independent appraisal of the risk they were assuming."); *accord Wyly v. CA, Inc.*, No. 05-cv-4430 (TCP), 2009 WL 3128034, at *13 (E.D.N.Y. Sept. 29, 2009), *aff'd sub nom. Wyly v. Computer Assocs. Inter. Inc.*, 384 F. App'x 46 (2d Cir. 2010).  Courts will consider, for example, what actions the plaintiff took to investigate statements with hints of falsity, how the plaintiff made further inquiries, or whether the plaintiff inserted appropriate language for protection. *See Holme*, 824 N.Y.S.2d at 214–16 (concluding that summary judgment for the defendant was warranted because there was no triable issue of fact on reasonable reliance).

Ms. Bain argues that she could have established fraud-in-the-inducement absent attorney malpractice in two ways.  First, as was addressed in the original case, that she was fraudulently induced because there was a material omission of information regarding the status of projects subject to her Finder's fee.  Pl.'s Mem. 20.  Second, that she was fraudulently induced because she was misled as to whether the scope of the Release "was limited to past due debts."  *Id.* at 20–22. For her second argument, Ms. Bain maintains that she confirmed that the Release's scope "was only for past due amounts" and that she was specifically told, "if Michael Jackson were to enter into a deal the day the Release was signed, Bain would be entitled to be paid from that deal."  *Id.*; Pl.'s Ex. 3 135:4–135:23; *see infra* Part I.A.  She claims that Mr. Jackson's representatives knew that she was laboring under a mistaken understanding and induced that misunderstanding.  Pl.'s Mem. 20–21.

As for Ms. Bain's first argument, none of the alleged malpractice would have led to a different result.  Review of the original record confirms that "the Jackson parties had no duty to

disclose the status of the projects on which Bain bases her claims" given that she, in fact, negotiated the projects and was familiar with their existence. *See Bain I*, 783 F. Supp. 2d at 18. Similarly, Ms. Bain could not reasonably rely on any omission given her actual knowledge of the projects. *See id.* The expanded record does not alter this conclusion, nor does the Letter bear on this matter.

As for the second argument, it does not appear that the district court addressed the question of whether the scope of the agreement was subject to fraudulent inducement. Regardless, Ms. Bain's argument is without merit because, even absent the Gary defendants' alleged malpractice, she would have lost on the required element of reasonable reliance. After all, "[a] plaintiff is expected to exercise ordinary diligence and may not claim to have reasonably relied on a defendant's representations where he has 'means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation.'" *Sitar v. Sitar*, 878 N.Y.S.2d 377, 380 (N.Y. App. Div. 2009) (quoting *Curran, Cooney, Penney, Inc. v. Young & Koomans, Inc.*, 583 N.Y.S.2d 478, 479 (N.Y. App. Div. 1992)).

Here, Ms. Bain's evidence, whether on the original record or the expanded record, goes against her contention that she reasonably relied on the statements made to her. The December 3, 2007 email from Mr. Jackson's attorney Frank Salzano specifically states that the release she would go onto sign was part of the "process . . . to clean all past debts and liabilities of Mr. Jackson." Pl.'s Ex. 6; Pl.'s Mem. 21. Mr. Jackson told her substantially the same thing. Pl.'s Ex. 3 138:1–138:23 ("If they place me in another position where I have all of these lawyers, accountants, consultants, and employees suing me, I won't get a dime from this loan refinance."). She was then put on notice that other releases covered a broad range of liabilities. Pl.'s Ex. 3 125:1–127:24 (Ms. Bain stating that she knew that "the other releases were unconditional releases"). In fact, because she was put on notice, Ms. Bain acted to "tailor" her release to represent

language that she wanted.  Pl.'s Ex. 3 125:5–125:10 ("My release -- due to my concerns and that of Mr. Jackson's, the sentence was added 'to be owed to you with respect to any payments you've entered into and agreements at the beginning of time until December 27th, 2007.'"); Pl.'s Mem. 21.  Her conversations with Mr. Jackson and his agents about the scope and import of the Release must be considered side-by-side with that background.  *See* Pl.'s Mem. 20–22.  Finally, as the original district court recognized, Ms. Bain was a sophisticated businesswoman.  *Bain I*, 783 F. Supp. 2d at 18.  She graduated from Georgetown University Law Center.  DX 14 124:6–124:8, ECF No. 89-2 at 250–567.  She had full access to the Release and read it before signing it.  Pl.'s Ex. 3 124:8.  This is far from the paradigmatic fraudulent inducement case, featuring an unsophisticated accident victim confronted with a strange release mere days after the accident.  *See Powell v. Adler*, 10 N.Y.S.3d 306 (N.Y. App. Div. 2015); Pl.'s Mem. 22 (relying on *Powell*).

The Court concludes that Ms. Bain could not have reasonably relied on the alleged statements by Mr. Jackson and his agents as to the Release's scope and thus could not have been fraudulently induced into signing the Release.  Ms. Bain was put on notice that all of the releases being sent out were part of a process to clean up Mr. Jackson's past debts and other liabilities; she saw how far other "unconditional" releases went, Pl.'s Ex. 3 125:1–127:24; she added language she felt was sufficient for her to sign the Release; she read the entire Release, including the statement that it covered "any and all agreements whether verbal or written that you may have entered," Release at 1; she signed the Release; and she did it all with a background of sophisticated business and legal knowledge.  Given this evidence—even when viewed in the light most favorable to Ms. Bain—no reasonable factfinder could conclude that the original or expanded record, including the Letter, would support the necessary finding of reasonable reliance.  *See Holme*, 824 N.Y.S.2d at 215 ("We find that even assuming the defendant made such misrepresentations with

intent to defraud, no triable issue exists with respect to [the sophisticated plaintiff's] claim for fraudulent inducement since the evidence establishes that [the plaintiff's] reliance on any such alleged misrepresentations was unreasonable."). Accordingly, there is no genuine dispute of material fact barring summary judgment on the issue of whether the Gary defendants' alleged failures caused Ms. Bain to lose on her fraudulent inducement argument.

### 3. Even Absent the Gary Defendants' Alleged Malpractice, Ms. Bain Could Not Demonstrate the Defense of Unilateral Mistake

"Under New York law, in order for a court to allow rescission of a contract on the basis of a unilateral mistake, 'a party must establish that (i) he entered into a contract under a mistake of material fact, and that (ii) the other contracting party either knew or should have known that such mistake was being made.'" *Kraft Foods*, 213 F. Supp. 2d at 330 (quoting *Ludwig v. NYNEX Serv. Co.*, 838 F. Supp. 769, 795 (S.D.N.Y. 1993)). Furthermore, a unilateral mistake requires the party raising the defense to show that "the other party t[ook] advantage of an error only it has noticed under circumstances constituting fraud." *Resort Sports Network Inc. v. PH Ventures III, LLC*, 886 N.Y.S.2d 5, 8 (N.Y. App. Div. 2009) (citing *George Backer Mgmt. Corp. v. Acme Quilting Co.*, 385 N.E.2d 1062 (N.Y. 1978)); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 585 (2d Cir. 2005) (considering New York law and concluding that "a party's unilateral mistake will not provide a basis for rescission unless it is accompanied by some fraud committed by the other contracting party").

Ms. Bain argues she would have succeeded on unilateral mistake, absent defendants' alleged malpractice, due to substantially the same evidence that she pointed to for fraudulent inducement. *See* Pl.'s Mem. 22–23. In her original lawsuit, the district court rejected Ms. Bain's unilateral mistake argument "[f]or the same reasons" it rejected her fraudulent inducement argument, stating that "[i]t is illogical to believe that the Jackson parties knew or should have

known that Bain was unaware of the deals—a showing that is required to prove unilateral mistake." *Bain I*, 783 F. Supp. 2d at 18.

Because this Court has already explained that no reasonable factfinder could conclude, even absent the alleged malpractice, that Ms. Bain reasonably relied on the alleged misrepresentations, summary judgment in favor of the Gary defendants is warranted on the issue of whether the defendants' alleged failures caused Ms. Bain to lose on her unilateral mistake argument. *See Aniero Concrete*, 404 F.3d at 585 ("To rescind a contract because of unilateral mistake [under New York law], therefore, the plaintiff must show . . . 'an injury resulting from justifiable reliance by the aggrieved party.'" (quoting *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991))).

### B.  Summary Judgment is Warranted on Causation for the Original Unjust Enrichment and Quantum Meruit Claims

As for causation related to the claims of unjust enrichment and quantum meruit, summary judgment is easily granted for defendants. A plaintiff may not sue under either claim when her alleged injury flows from an actual contractual relationship. *See Emerine v. Yancey*, 680 A.2d 1380, 1384 (D.C. 1996); *4934, Inc. v. D.C. Dep't of Emp. Servs.*, 605 A.2d 50, 55–56 (D.C. 1992); *accord Heller v. Kurz*, 643 N.Y.S.2d 580 (N.Y. App. Div. 1996) ("A cause of action under a quasi contract theory only applies in the absence of an express agreement." (internal quotation marks omitted) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190 (N.Y. 1987))). Indeed, in her opposition, Ms. Bain does not try to argue that unjust enrichment or quantum meruit were otherwise meritorious claims lost due to the Gary defendants' alleged malpractice—despite the Gary defendants dedicating a subheading to the argument. *Compare* Defs.' Mem. 18–19 ("Allegations of Unjust Enrichment and Quantum Meruit Fail Since PSA Was a Valid Contract."), *with* Pl.'s Mem. (failing to mention "unjust enrichment" or "quantum meruit").

As the district court explained, and Ms. Bain does not dispute, "the PSA is a valid contract, which precludes relief under those [equitable] theories." *Bain I*, 783 F. Supp. 2d at 19 (citing *Bloomgarden v. Coyer*, 479 F.2d 201, 210 (D.C. Cir. 1973)).  The district court's analysis was correct on de novo review, no additional evidence in the record for this lawsuit has been presented to show otherwise, and the Letter has no bearing on the existence and validity of the PSA. Consequently, the Gary defendants are entitled to judgment as a matter of law on causation for the unjust enrichment and quantum meruit claims.

*     *     *

There is no genuine dispute of material fact as to causation, the third element of legal malpractice, and no reasonable factfinder could conclude on this record that Ms. Bain lost a meritorious claim in her original lawsuit.  Therefore, the Court will enter judgment as a matter of law on the causation element and, because that element is required for Ms. Bain to prevail, the Court will order that Ms. Bain's lawsuit be dismissed with prejudice.

## IV.    CONCLUSION

Based on the reasoning above, this Court will **GRANT** the Gary defendants' motion for summary judgment.  The Court will therefore enter judgment for the Gary defendants on the causation element of legal malpractice.  Because that element is required, the Court will **DISMISS WITH PREJUDICE** the plaintiff's lawsuit.

The Court will also **DENY** the plaintiff's motion for partial summary judgment as moot.

A separate order will issue.

Date: September 2, 2022

Royce C. Lamberth
United States District Judge